IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NAFIZ WATKINS, #461809      *

Plaintiff                    *

v                            *          Civil Action No. CCB-17-2893

STATE OF MARYLAND,           *
MARYLAND DIVISION OF CORRECTION,
WARDEN OF MTC,               *
C.O. MURR-ESTRADA,
C.O. DIKE,                   *
LT. PATTERSON,
WEXFORD HEALTH SOURCES, INC., and   *
MAJOR VINCENT
                             *
Defendants
                         ***
## MEMORANDUM

Nafiz Watkins alleges violations of the Eighth Amendment to the United States Constitution in this complaint filed pursuant to 42 U.S.C. §1983. Defendant Wexford Health Sources, Inc., ("Wexford") has filed a motion to dismiss or, in the alternative, motion for summary judgment (ECF 15). Watkins filed an opposition (ECF 20) and Wexford filed a reply. ECF 21. Defendants, the State of Maryland, the Maryland Division of Correction, Warden Kathleen Landerkin of the Metropolitan Transition Center ("MTC"), Officer Christopher Murr-Estrada, Officer Uzoma Dike, Major Calvin Vincent, and Lt. Tamara Patterson, (collectively, the "State Defendants")[1] also filed a motion to dismiss or, in the alternative, motion for summary judgment (ECF 29). Watkins was provided an opportunity to respond to Wexford and the State Defendants' motions and include verified exhibits and declarations (ECF 30). He did not oppose the State Defendants' motion.

---

[1] The Clerk shall amend the docket to reflect Defendants' names and titles as they appear in the memorandum filed in support of their dispositive motion. ECF 29-1 at 1.

Upon review of the submitted materials, the court finds that a hearing is unnecessary. *See* D. Md. Local R. 105.6 (2016). For the reasons set forth below, defendants' motions will be granted. The claims against defendants will be dismissed with prejudice.

## BACKGROUND

### I. Plaintiff's Allegations

Watkins is a Maryland state inmate who is presently incarcerated at the Maryland Correctional Institution in Hagerstown, Maryland. On September 29, 2017, Watkins filed this complaint pro se alleging that on September 14, 2016, he was attacked by inmate Lester Ashe at the Metropolitan Transition Center (MTC). Watkins alleges that on September 14, 2016, while he was awaiting transportation to arrive at MTC to take him to another facility, Ashe attacked him. Officers Murr-Estrada and Dike broke up the fight. ECF 1 at 2. Watkins was escorted to the medical office for treatment. Watkin alleges that he had previously advised correctional staff at MTC and the Maryland Reception and Diagnostic Center (MRDCC) that Ashe was his enemy. ECF 1 at 2, 3. Watkins explains that Ashe had shot him seven times on July 14, 2015, and later Watkins testified as a State's witness in Ashe's prosecution for attempted murder and other offenses in connection with the shooting. ECF 1 at 2; ECF No. 29-2 at 19.

The doctor who examined Watkins after the September 14, 2016 incident observed Watkins' right hand was swollen and that he had several cuts and abrasions. ECF 1 at 3. The doctor gave Watkins an ice pack and told him to get an x-ray for his hand at the next facility. Watkins alleges that Lt. Patterson and Major Vincent sent him to "lock up" pending a hearing without investigating the incident.[2] ECF 1 at 3. Watkins avers that he was denied further medical treatment and grievance forms as a result. ECF 1 at 3. He alleges that "every time I

---

[2] Watkins was housed either at the Baltimore Central Booking and Intake Center (BCBIC) or the MRDCC until his transfer to ECI on December 13, 2016. ECF 29-2 at 10-11, ECF 15-4.

2

asked for treatment (my x-ray) grievances or to speak to someone because I couldn't write, I was denied and told 'you shouldn't have been fighting.'" ECF 1 at 3.

Watkins was subsequently transferred to Eastern Correctional Institution (ECI). Watkins alleges he fractured his hand during the attack and that had the doctor ordered an x-ray, his hand would have healed faster. He claims his fractured hand was not x-rayed until October 2016 and that this "was too late." ECF 1 at 4. Watkins faults the Warden of MTC for failing to "properly train his employees so that this could have been prevented." ECF 1 at 4.

Watkins is requesting $1,000,000 in compensatory damages from the State of Maryland and the Maryland Division of Correction, $500,0000 five-hundred thousand dollars from Officer Murr-Estrada and Officer Dike in their official and individual capacities, $20,000 from Lieutenant Tamara Patterson and Major Calvin Vincent [3] in their official and individual capacities, and $500,000 from Warden Kathleen Landerkin in her official and individual capacity, and $500,000 from Wexford.[4]

## STANDARD OF REVIEW

A complaint is subject to dismissal if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Rule

---

[3] The litigation coordinator for the Maryland Transition Center did not accept service by mail for Major Vincent. ECF No. 7-1, 14. Although counsel did not enter an appearance for Vincent, the State Defendants' motion and supporting memorandum was filed by counsel on behalf of all named State Defendants, including Vincent. ECF 29 at 1, 29-1 at 1.

[4] Watkins asks for $500,000 from the "doctor who didn't provide me necessary treatment." ECF 1 at 5 However, Watkins neither provided the name of this individual nor listed him as a defendant.

3

12(b)(6)'s purpose "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012) (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)). Courts are required to liberally construe documents filed by self-represented litigants, holding them to a less stringent standard than those drafted by attorneys, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The requirement of liberal construction does not mean that a court can ignore a clear failure in the pleading to allege facts that set forth a federally cognizable claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

## ANALYSIS

### I. Claims against the State Defendants

The State Defendants assert they are entitled to dismissal of the claims against them on several grounds. They argue that Warden Landerkin did not personally participate in the alleged wrongdoings, the State of Maryland and the Division of Correction (DOC) are immune from liability under the Eleventh Amendment, the claims against Warden Landerkin, Officer Murr-Estrada, Officer Dike, Lt. Patterson in their official capacities are barred under the Eleventh Amendment, and Watkins fails to show defendants acted with deliberate indifference. The State Defendants also assert they are entitled to qualified immunity.

#### A. State of Maryland and the Division of Correction

The complaint as to the State of Maryland and the Division of Correction is barred by Eleventh Amendment immunity. Under the Eleventh Amendment to the United States Constitution, a state, its agencies and departments are immune from suits in federal court brought by its citizens or the citizens of another state, unless it consents. *See Pennhurst State Sch. and*

4

*Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Bd. of Trs. of Univ. of Alabama v. Garrett*, 531 U.S. 356, 363 (2001). "It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Id.*, citing *Florida Department of Health v. Florida Nursing Home Assn.*, 450 U.S. 147 (1981) (*per curiam*). While the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. Code Ann., State Gov't § 12-202(a), it has not waived its immunity under the Eleventh Amendment to suit in federal court. "A State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued." *Halderman*, 465 U.S. at 100 (emphasis in original). Thus, Watkins's complaint against the State of Maryland and the Maryland Division of Correction, an agency within the State of Maryland, is barred by the Eleventh Amendment.

The Eleventh Amendment also bars claims brought against state employees in their official capacity. *See Gray v. Laws*, 51 F.3d 426, 430 (4th Cir. 1995) ("state officers acting in their official capacity are also entitled to Eleventh Amendment protection"); *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985) ("a judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents"). Therefore, the court grants defendants' motion to dismiss the claims against them in their official capacity.

### B. Warden Landerkin

Landerkin maintains that the complaint fails to raise any personal liability claims against her. In order for liability to exist under 42 U.S.C. § 1983, a defendant must be personally involved in the alleged violation. *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977); *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). The liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on a recognition that

supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." *Bayard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001), citing *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984). Supervisory liability may attach under § 1983 if a plaintiff can establish three elements: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices," and (3) an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *Id.* at 799 (citations omitted). Watkins's sole claim against Landerkin is that as the Warden of MTC she failed to "... properly train his [sic] employees so that this could have been prevented." ECF 1 at 4. This conclusory statement is insufficient to show that Landerkin had actual or constructive knowledge to confer supervisory liability. As Landerkin does not appear to have been personally involved, or to have had actual or constructive knowledge of the matters at issue, the claims against Landerkin will be dismissed.

### C. Christopher Murr-Estrada, Dike, Vincent, and Patterson

#### 1. Eighth Amendment Claims

To proceed under 42 U.S.C. § 1983, a plaintiff must allege a violation of a federal constitutional right or a right secured by federal law. *Baker v. McCollan*, 443 U.S. 137, 140 (1979). The plaintiff's claims of failure to protect and inadequate medical care are examined in light of the Eighth Amendment, which prohibits "cruel and unusual punishments," such as those involving the "unnecessary and wanton infliction of pain," *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).

### a. Failure to Protect

The State Defendants argue that Watkins has failed to satisfy the requirements for an Eighth Amendment failure to protect claim because there is no evidence that they knew of a specific threat to Watkins or that they exercised deliberate indifference to Plaintiff's safety.

A failure to protect claim must satisfy an objective and subjective standard. Objectively, the prisoner "must establish a serious deprivation of his rights in the form of a serious or significant physical or emotional injury" or substantial risk to either injury. *Danser v. Stansberry*, 772 F.3d 340, 346-47 (4th Cir. 2014). Prison conditions may be restrictive and even harsh, but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penologicial objective, any more than it squares with evolving standards of decency. Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer v. Brennan*, 511 U.S. 825, 833–34 (1994) (citations omitted). Nonetheless, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." *Id.* at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*; *see also Rich v. Bruce*, 129 F.3d 336, 339–40 (4th Cir. 1997).

Watkins does not allege that prior to the assault he had informed Murr-Estrada, Dike, Vincent, or Patterson that Ashe was his enemy or that he feared for his safety. Watkins has failed to proffer evidence that defendants were in fact aware of an excessive risk of harm to his safety. Accordingly, Watkins' failure to protect claim against defendants in their individual capacities will be dismissed.

### b. Medical Care

In *Estelle v. Gamble*, the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the wanton infliction of pain," regardless whether the indifference is "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. 97, 104–05 (1976). The Court cautioned that not every allegation of inadequate medical treatment states a claim under the Eighth Amendment. *Id.* at 105. Neither an "inadvertent failure to provide adequate medical care" nor "negligen[ce] in diagnosing or treating a medical condition" amounts to deliberate indifference. *Id.* at 105–06.

To establish an Eighth Amendment claim a plaintiff must prove: "(1) that the deprivation of a basic human need was objectively sufficiently serious; and (2) that subjectively the officials acted with a sufficiently culpable state of mind." *De'lonta v. Johnson*, 708 F.3d 520, 525 (4th Cir. 2013) (emphasis in original). The court must "consider prison officials' culpable mental state because 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment' " *King v. U.S.*, 536 Fed. Appx. 358, 360 (4th Cir. 2013) (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).

"To constitute deliberate indifference to a serious medical need, 'the treatment a prisoner receives must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.' " *King* at 361 (quoting *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990), overruled in part on other grounds by *Farmer*, 511 U.S. at 825). A prison official is "deliberately indifferent to an inmate's serious medical needs only when he ... subjectively 'knows of and disregards an excessive risk to inmate health or safety.' " *Jackson v.*

*Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Farmer*, 511 U.S. at 837). A plaintiff can meet the subjective knowledge requirement through direct evidence of a prison official's actual knowledge or through circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) (quoting *Farmer*, 511 U.S. at 842).

Assuming Watkins has demonstrated his medical needs were sufficiently serious, he fails to allege Murr-Estrada, Dike, Vincent, or Patterson personally denied him medical treatment, interfered with his medical care, or acted with deliberate indifference to his serious medical needs. His only specific allegation against Patterson and Major Vincent is that they sent him to "lock up" pending a hearing without investigating the incident purportedly causing him to be denied "further medical treatment and grievance forms." [5] ECF 1 at 3. Watkins also alleges he was denied treatment and grievance forms by a person or persons who told him that he "should not have been fighting." ECF 1 at 3. Watkins, however, does not identify the individuals who allegedly denied him medical treatment or forms. Absent an allegation, much less evidence, that Patterson, Vincent, or the other State Defendants were deliberately indifferent to Watkins's serious medical needs, Watkins fails to state an Eighth Amendment claim of inadequate medical care. This claim will be dismissed.

## II. Claim against Wexford

Wexford is a private corporation contracted by the State of Maryland to provide medical

---

[5] In *Adams v. Rice*, 40 F.3d 72 (4th Cir. 1994), the United States Court of Appeals for the Fourth Circuit stated that "there is no constitutional right to participate in grievance proceedings," but it did so in the context of rejecting an inmate's claim that the Eighth Amendment provides a "right to inform" prison officials of dangerous conditions, and that the inmate was subjected to retaliation for exercising that "right" by seeking protective custody. *Id.* at 75. In *ACLU v. Wicomico County*, 999 F.2d 780 (4th Cir. 1993), the Fourth Circuit found a First Amendment right in the prison context, but the right asserted was to be free from retaliation by prison officials as a result of a prisoner's filing of a suit. *Id.* at 785. Here, Watkins does not allege he was denied grievance forms as a result of unlawful retaliatory animus.

9

services to inmates in the State's custody, and is entitled to dismissal based on the record outlined herein. A private corporation is not liable under § 1983 for actions allegedly committed by its employees when such liability is predicated solely upon a theory of respondeat superior. *See Austin v. Paramount Parks, Inc.,* 195 F.3d 715, 727-28 (4th Cir. 1999); *Powell v. Shopco Laurel Co.,* 678 F.2d 504, 506 (4th Cir. 1982); *Clark v. Maryland Dep't of Public Safety and Correctional Services,* 316 Fed. Appx. 279, 282 (4th Cir. 2009); *see generally Love-Lane v. Martin,* 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983).[6] The complaint presents no discernible claim directly involving Wexford other than its role as the medical services provider, and the claims against it will be dismissed.[7]

---

[6] Had Wexford's motion been treated as one for summary judgment, the Court would have considered the affidavit executed by Getnet Luka, M.D., which was submitted by Wexford. Dr. Luka states:

> Plaintiff is in error when he alleges that an immediate x-ray would have avoided a"healing fracture." An x-ray even when taken weeks later, could only detect a fracture. It cannot in any manner remedy the fracture. Plaintiff's October 2016 x-ray indicated a sub-acute to chronic healing fracture. This means that the fracture was not extensive and had already commenced healing. Conservative treatment for a sub-acute metacarpal fracture would typically be limited to splints or a cast, but they would not be indicated at this stage of the healing process. Plaintiff's subsequent November 2017 x-ray indicated the fracture had healed with correct anatomic alignment. In Affiant's opinion to a reasonable degree of medical probability, no more than that would have been achieved had a splint or cast been applied closer to the time of the incident.

ECF No. 15-5. Watkins did not file a declaration or other verified evidence in his reply. ECF 20.

[7] Watkins raises a claim of negligence in his Reply against Dr. Sunday Nwosu for failing to order an x-ray, splint or cast for his hand. ECF No. 20. Nwosu is not a defendant in this case, nor may Watkins raise a new claim in the Reply. *See Myland Labs., Inc. v Akzo, N.V.,* 770 F. Supp. 1053, 1068 (D. Md. 1991) (stating "it is axiomatic that the complaint may not be amended by briefs in opposition to a motion to dismiss"); *see also Zachair Ltd. v. Driggs,* 965 F. Supp. 741, 748 n.4 (D. Md. 1997) (stating that a plaintiff "is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint"), aff'd, 141 F.3d 1162 (4th Cir. 1998). Further, negligence will not support an Eighth Amendment claim. "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835 (1994).

## CONCLUSION

For these reasons, defendants' motions to dismiss (ECF 15, 29) are granted. The claims against defendants are dismissed with prejudice. A separate order follows.

7/17/18
Date

Catherine C. Blake
United States District Judge